IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD C. SMITH                                    Case No. 6:14-cv-01606-MA

                 Plaintiff,                          OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

                 Defendant.

KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

       Attorney for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

SARAH ELIZABETH MOUM
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Donald C. Smith seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403 and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, this court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on February 7, 2011, alleging disability beginning January 1, 2010, due to attention deficit disorder (ADD), diabetes, and sleep apnea. Plaintiff meets the insured status requirements for a DIB application through September 30, 2015.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on March 19, 2013, at which plaintiff appeared with his attorney and testified. A vocational expert, C. Kay Wise, also appeared at the hearing and testified. On June 18, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1966, plaintiff was 46 years old on the date of the ALJ's unfavorable decision. Plaintiff attended special education classes and completed high school. Plaintiff has past relevant work as a fast food worker, gas station attendant, security guard, and cook.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since January 1, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus; obesity; degenerative disc disease; cervical radiculitis; rotator cuff syndrome; dermatophytosis/plantar fasciitis of the bilateral feet; dysthymic disorder; generalized anxiety disorder with social phobia; and borderline intellectual functioning. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) for light work defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) but with the following limitations:

> [Plaintiff] is limited to work requiring no standing/walking for more than two hours in an eight-hour day, with no more than occasional climbing or crawling, no more than frequent outward reaching and no overhead reaching with the left upper extremity. Additionally, as a result of the moderate deficits in social functioning and concentration, persistence, or pace associated with his mental impairments, the claimant is able to use common sense understanding to perform detailed but uninvolved oral and written instructions (consistent with SVP/reasoning level 2), but should work with things rather than people or data, and is limited to occasional contact with co-workers and the general public.

Transcript of Record ("Tr."), ECF No. 11 at 30.

At step four, the ALJ found that plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as hand bander. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from January 1, 2010, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate the medical opinions of treating physician Arnoldo Padilla-Vazquez; (2) the ALJ failed to properly evaluate plaintiff's credibility; (3) the ALJ erred in evaluating lay testimony; and (4) the ALJ erred at Step Five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## I.    The ALJ Erred in Evaluating Treating Physician's Opinions

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148(9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

On February 22, 2013, plaintiff established care with Arnoldo Padilla-Vazquez, M.D. Dr. Padilla-Vazquez noted that plaintiff reported significant back and left shoulder pain. Tr. 515. Dr. Padilla-Vazquez also indicated that plaintiff noted losing strength in his hands and occasionally dropping things. Tr. 515. In the examination, Dr. Padilla-Vazquez noted trace edema in plaintiff's extremities and evidence of dermatophytosis in his feet. Tr. 517. Dr. Padilla-Vazquez observed intact

sensation, left hand weakness, and tenderness to palpation of the left shoulder. *Id*. Dr. Padilla-Vazquez also noted a positive arm drop sign and arc of pain. *Id.* Dr. Padilla-Vazquez diagnosed cervical radiculitis, rotator cuff syndrome and possible small rotator cuff tear, dermatophytosis of the feet, and plantar fasciitis. *Id.*

As a follow-up to the examination, Dr. Padilla-Vazquez ordered Magnetic Resonance Imaginings (MRIs) of plaintiff's left shoulder and cervical spine. *Id.* Plaintiff's March 18, 2013 cervical spine MRI revealed multilevel cervical spondylosis with prominent posterior ligamentous ridging at multiple levels and mild to moderate canal stenosis affecting the nerve root at several levels. Tr. 526. Plaintiff's March 18, 2013 left shoulder MRI indicated possible rotator cuff strain, complete atrophy of the teres minor muscle, and moderate AC joint arthrosis with subacromial and infraclavicular spurring. Tr. 524-25.

Dr. Padilla-Vazquez provided two opinions. First, in a March 28, 2013 treatment note, Dr. Padilla-Vazquez noted that plaintiff's cervical spine MRI reveals spurring arthritis, degenerative disk disease at multiple levels, and probable nerve impingement. Tr. 529. Dr. Padilla-Vazquez further noted that plaintiff's left shoulder MRI shows significant abnormalities and evidence of inflammation. *Id.* Dr. Padilla-Vazquez opined that "in the case of disability, I think [plaintiff] has significant justification with these [MRI] findings." Tr. 529. Dr. Padilla-Vazquez also opined that plaintiff will need to see a surgeon for both his neck and back impairments. *Id.*

Second, Dr. Padilla-Vazquez signed an April 1, 2013 letter drafted by plaintiff's attorney. Tr. 522-23. In the letter, Dr. Padilla-Vazquez opined that plaintiff's left shoulder MRI revealed significant chronic damage that will affect plaintiff's use of his arm. Tr. 522. Dr. Padilla-Vazquez also opined that arthritis in plaintiff's shoulder will result in a decreased range of motion in the

future. *Id.* Dr. Padilla-Vazquez further opined that the MRIs of plaintiff's back and left shoulder substantiate his pain allegations, and given the degenerative changes, plaintiff will continue to experience a decreased range of motion in his neck. *Id.*

Because Dr. Padilla-Vazquez's opinions were contradicted,[1] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ gave little weight to Dr. Padilla-Vazquez's letter because it does not offer specific functional limitations. Tr. 34. The ALJ gave little weight to Dr. Padilla-Vazquez's treatment note because his opinion on disability "infringes on an issue reserved to the Commissioner." *Id.*

An ALJ may discredit a physician's medical opinion on the basis that it is vague in terms of work-related limitations. *See Morgan v. Commissioner of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999) (affirming an ALJ's discrediting of a physician's opinion because the opinion does not show how plaintiff's "symptoms translate into specific functional deficits which preclude work activity").

Contrary to the Commissioner's argument, Dr. Padilla-Vazquez provided specific functional restrictions. In the decision, the ALJ selectively cited to the phrase "issues with the use of [plaintiff's] left arm" from Dr. Padilla-Vazquez's letter without discussing his entire opinion. Tr. 34. Dr. Padilla-Vazquez also opined that plaintiff's left shoulder arthritis and inflammation will cause a decreased range of motion.[2] Tr. 522. Dr. Padilla-Vazquez indicated that plaintiff's cervical spine

_____

[1] In a November 1, 2011 physical RFC assessment, Martin Lahr M.D., a nonexamining physician opined that plaintiff can lift and carry ten pounds frequently and 20 pounds occasionally, and sit for six hours and walk and stand for two hours each in an eight-hour workday. Tr. 120-21.

[2] I reject the Commissioner's *post hoc* argument that Dr. Padilla-Vazquez provided future restrictions rather than current functional limitations. The ALJ did not reject Dr. Padilla-

MRI revealed diffuse disc disease, arthritis, and probable nerve impingement, which results in a decreased range of motion in the neck. Tr. 522; *see Morgan*, 169 F.3d at 601 (translating plaintiff's "symptoms of pain into specific functional deficits"). Thus, substantial evidence does not support the ALJ's rejection of Dr. Padilla-Vazquez's opinion as vague. I find that this is not a specific and legitimate basis to reject Dr. Padilla-Vazquez's opinion.

With regard to Dr. Padilla-Vazquez's opinion that plaintiff is disabled, the Commissioner correctly argues that this is an issue reserved to the Commissioner. *See* Social Security Regulation 96-5p, 1996 WL 374183, *3 (July 2, 1996). However, Dr. Padilla-Vazquez specifically opined that plaintiff's MRI findings provide significant justification for concluding he is disabled. Tr. 529. The ALJ failed to evaluate the extent to which plaintiff's MRI findings support Dr. Padilla-Vazquez's disability opinion. *See* SSR 96-5p, 1996 WL 374183, *3 ("[an ALJ] must evaluate all evidence in the case that may have a bearing on the determination . . . of disability, including opinions from medical sources about issues reserved to the Commissioner"). Accordingly, substantial evidence does not support the ALJ's rationale.

In sum, the ALJ failed to cite specific and legitimate reasons, supported by substantial evidence to reject Dr. Padilla-Vazquez's opinions, and therefore, has erred.

---

Vazquez's opinion on this basis. *Bray v. Commissioner of Soc. Sec. Admin.,* 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**II.    The ALJ Erred in Evaluating Plaintiff's Credibility**

    **A.    Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

    **B.    Analysis**

At the March 19, 2013 hearing, plaintiff testified to experiencing back pain on a daily basis. Tr. 62. Plaintiff testified that although he has health insurance, it does not cover prescription medication. Tr. 63. Specifically, plaintiff testified that he has difficulty paying for insulin and

receives free samples from his treatment provider. Tr. 64. Plaintiff also testified that he worked part-time for two years after applying for disability. Tr. 57. Plaintiff further testified that his supervisor reduced his hours to approximately four hours a week before firing him in 2012 because he worked slower than most employees. Tr. 57, 65. Moreover, plaintiff testified that he experienced significant back pain after a short shift at work and spent several hours resting in his recliner to alleviate his pain. Tr. 67. Plaintiff testified that left shoulder pain made it difficult for him to pick up small boxes weighing five to 20 pounds. Tr. 68.

In a May 14, 2011 Adult Function Report, plaintiff noted that he gets his children ready for school and walks them to the bus stop. Tr. 276. Plaintiff noted that he prepares meals daily and performs two hours of basic cleaning every other day. Tr. 277-78. Plaintiff indicated that he is unable to perform outside chores such as yard work due to his back and joint pain. Tr. 278. Plaintiff also noted that he has trouble lifting, squatting, bending, and kneeling as a result of his back pain. Tr. 280. Plaintiff indicated that he can walk for 30 minutes before needing to rest. Tr. 280. Plaintiff also noted that he is easily distracted, especially in a crowded setting. Tr. 280. Plaintiff further indicated that he has difficulty understanding and completing tasks and requires repeated instructions. Tr. 282.

In the decision, the ALJ found plaintiff only partially credible. The ALJ gave three reasons for rejecting plaintiff's testimony. As discussed below, taken together, these reasons fail to reach the clear and convincing level.

### 1. Activities of Daily Living (ADLs)

The ALJ improperly discounted plaintiff's credibility on the basis of his activities of daily living (ADLs). Specifically, the ALJ noted that plaintiff has no difficulty with personal care, spends

time each day getting his children ready for school, and prepares dinner daily. Tr. 33. The ALJ also noted that plaintiff performs household chores for two hours each day. *Id.*

However, as plaintiff correctly argues, his ADLs are not inconsistent with his allegations. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). Plaintiff's ability to perform light household chores and care for his children does not easily transfer to a work environment. For example, plaintiff reported resting in his recliner for several hours after walking his children to the bus stop. Tr. 323. Plaintiff also noted that while he performs light house work every other day for about two hours, he is unable to perform any yard work. Tr. 278. Based on the record, plaintiff's description of his ADLs does not undermine his subjective allegations of pain.

The ALJ also found plaintiff's part-time work activity inconsistent with his pain symptoms. *Bray v. Commissioner of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009) (part-time work activity is relevant to plaintiff's credibility assessment). As the ALJ noted, plaintiff testified to working in fast food for two years after his alleged onset date of disability. Tr. 33, 57-58. The ALJ found that plaintiff continued to apply for jobs online after filing his disability application. Tr. 33. As the Commissioner correctly contends, evidence of plaintiff applying for jobs while alleging he is disabled is relevant to the evaluation of plaintiff's credibility. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (plaintiff's search for work during the alleged period of disability is relevant credibility evidence).

11 - OPINION AND ORDER

However, the ALJ failed to consider *all* relevant evidence regarding plaintiff's work activity. Specifically, the ALJ did not address plaintiff's testimony that his manager reduced his hours due to his slow performance. Tr. 66-67. At the hearing, plaintiff testified that he had not worked full time after his alleged onset date and worked four hours a week in 2011. Tr. 57. Moreover, plaintiff testified to significant back pain and stiffness after working a few hours, which is consistent with his pain allegations. Tr. 67-68. Indeed, plaintiff testified that his back pain and problems with concentration affected his ability to perform his fast food job. Tr. 65-66. Plaintiff also reported to his therapist how his back pain slowed his work performance. Tr. 459; *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (evidence that a claimant tried to work and failed may support his allegations of disabling pain).

Because the ALJ failed to address all the significant and probative evidence regarding plaintiff's part-time work, this basis is not supported by substantial evidence and does not constitute a clear and convincing reason to reject plaintiff's testimony. *See Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (it is impermissible for the "ALJ to [develop an] evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports").

### 2. Lack of consistent treatment/Noncompliance

Next, the ALJ discredited plaintiff's testimony for inconsistent medical care and noncompliance with prescribed treatment. The ALJ found that plaintiff's impairments respond to treatment, but plaintiff is often noncompliant with prescribed medication. Tr. 33. Specifically, the ALJ noted that when plaintiff took his insulin as prescribed, his blood sugar levels improved. Tr. 33. The ALJ acknowledged a "financial component to [plaintiff's] noncompliance," but still discounted plaintiff's testimony on this basis. Tr. 33.

An "unexplained or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a number of good reasons for not doing so applies." *Orn,* 495 F.3d at 638. In this case, plaintiff testified that prior to 2011, he was uninsured, and his current health plan does not cover prescription medications, such as insulin. Tr. 63, 340. Plaintiff testified that his doctor gave him free insulin because he cannot afford the medication out of pocket, and the medical record corroborates his testimony. Tr. 64, 493-94. The ALJ does not adequately address plaintiff's financial difficulty as a reason for his noncompliance with prescribed treatment. Tr. 33.

Contrary to the Commissioner's argument, the ALJ may not discredit plaintiff's testimony on the basis that he is noncompliant with medication if he is unable to afford the medication. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . [including an inability] to afford treatment and [a lack of] access to free or low-cost medical services." Social Security Regulation (SSR) 96-7p, 1996 WL 374186, *7 (July 2, 1996); *see also Orn*, 495 F.3d at 638. The ALJ did not find that plaintiff's "proffered reason was not believable," nor does the record contradict plaintiff's statement of a period without health insurance and an inability to afford medications. *Orn*, 495 F.3d at 638. Thus, it is improper to discount plaintiff's credibility on the basis of a failure to pursue treatment or comply with treatment when plaintiff has a good reason for not doing so, such as a lack of insurance coverage. *Carmickle v. Commissioner, Soc. Sec. Admin.,*533 F.3d 1155, 1162 (9th Cir. 2008).

The Commissioner correctly notes that the medical record shows plaintiff's mental health improved after six months of counseling. Tr. 32, 340. However, the ALJ failed to adequately address plaintiff's financial constraints. Accordingly, plaintiff's infrequent treatment and noncompliance

does not constitute a convincing reason to reject plaintiff's testimony. Therefore, I conclude that the ALJ's reasoning on this point is not supported by substantial evidence.

### 3. Objective medical findings

Finally, the ALJ rejects plaintiff's testimony on the basis of inconsistency with the medical record. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("The medical record is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). As the Commissioner correctly argues, the ALJ appropriately found that plaintiff's objective mental examination findings do not support his allegations of difficulty with attention and concentration. For example, in a June 2011 consultative examination, Paula M. Belcher, Ph.D. observed a slightly blunted affect and noted that plaintiff completed mental tasks such as serial sevens and recalling digits with few errors. Tr. 32, 355. Dr. Belcher opined that plaintiff's examination revealed some mild impairment in attention, concentration, and memory. Tr. 356. Dr. Belcher diagnosed dysthymic disorder, generalized anxiety disorder, social phobia, and nicotine dependence, features of avoidant and dependent personality disorders, and possible borderline intellectual functioning. Tr. 359. Dr. Belcher also noted that although plaintiff reported childhood symptoms reflecting Attention Deficit Hyperactivity Disorder (ADHD), he did not appear to present with these symptoms at the examination. Tr. 359.

Similarly, medical evidence early in the disability period documents relatively benign physical findings. For example, in a July 2011 examination, treating nurse practitioner Michele O'Connor noted intact strength, minor discomfort in rotation of the right hip, and point tenderness along the lumbosacral region. Tr. 398. Ms. O'Connor diagnosed low back pain with noted sciatica and prescribed physical therapy. *Id.* Plaintiff's back pain improved with physical therapy in

14 - OPINION AND ORDER

September 2011, but plaintiff fell off a ladder in December 2011. Tr. 404, 408. A December 2011 x-ray of plaintiff's lumbar and thoracic back revealed multilevel degenerative changes. Tr. 411. Plaintiff completed another round of physical therapy and reported relief in February 2012. Tr. 419.

However, the ALJ failed to adequately assess later probative evidence in the record. In the decision, the ALJ referred to plaintiff's 2013 MRIs as "radiological findings supportive of cervical radiculitis and rotator cuff syndrome of the left shoulder," without citing to actual findings. Tr. 31. The ALJ did not evaluate Dr. Padilla-Vazquez's opinion that the MRIs substantiate plaintiff's reports of pain. Tr. 523. As discussed above, the MRI findings constitute significant and probative evidence, and the ALJ should have addressed them. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *see also Reddick*, 157 F.3d at 723 (It is inappropriate for the ALJ to selectively cite to the record to support his findings.). Accordingly, the ALJ's rationale is not supported by substantial evidence.

In sum, taking the above reasons together, I conclude the ALJ failed to cite to clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony. The ALJ erred in discrediting plaintiff's allegations.

## III.    The ALJ Erred in Evaluating Lay Testimony

Lay witness testimony as to how a claimant's symptoms affect her ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

A.    **Margaret Hadley**

In a May 10, 2012 letter, therapist intern Margaret Hadley noted treating plaintiff on a weekly basis beginning January 2012. Tr. 415. Ms. Hadley noted that plaintiff's anxiety and depression results from his underemployment. *Id.* Ms. Hadley also noted that plaintiff reported difficulty socializing with groups of people and performing complex tasks by memory. *Id.* Ms. Hadley opined that plaintiff could sustain a full-time simple, routine, low-stress job that does not require contact with the public or close coordination with supervisors or co-workers. Ms. Hadley also opined that plaintiff would require special accommodations such as sitting for some or all of his work day and limiting distractions such as noise. Tr. 416.

The ALJ considered and gave "little weight" to Ms. Hadley's opinion for three reasons. Tr. 34. Although two of these reasons are not germane, the ALJ provided one germane reason for rejecting her opinion.

The ALJ discredited Ms. Hadley's opinion on the basis that she is not an acceptable medical source as defined under the social security regulations. Tr. 19; 20 C.F.R. §§ 404.1513(d), 416.913(d). Opinions from "acceptable medical sources" may generally be accorded more weight than those from "other sources" such as a nurse practitioner or physician's assistant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (overruled on other grounds*).* In this case, Ms. Hadley is a therapist intern, which is not an acceptable medical source. Tr. 415-416. To be sure, the ALJ thoroughly discussed Ms. Hadley's opinion with respect to the severity of plaintiff's impairments and functional limitations but ultimately rejected her assessment. Thus, this is a germane reason for rejecting Ms. Hadley's opinion.

However, the ALJ improperly rejected Ms. Hadley's opinion on the basis that several of her assessed limitations are vague. Ms. Hadley assessed specific restrictions including the ability to perform simple, routine, low-stress work with no contact with the public or close coordination with supervisors or co-workers. Tr. 415. Although Ms. Hadley failed to indicate how many hours a day plaintiff could stand during the workday, sitting and standing are specific functional limitations. Thus, the ALJ's reasoning is not supported by substantial evidence.

Finally, the ALJ improperly rejected Ms. Hadley's opinion because it is based on plaintiff's subjective allegations. *Bray*, 554 F.3d at 1228 (physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded). It is clear that Ms. Hadley relied on plaintiff's allegations of back pain to assess physical limitations. Ms. Hadley did not perform a physical examination and only treated plaintiff in a mental health capacity. Tr. 415-16, 430-467. However, as discussed above, the ALJ erred in assessing plaintiff's credibility. While Ms. Hadley relied on plaintiff's self-report of pain to opine limitations resulting from his back impairment, the ALJ cannot rely on his flawed credibility determination to discredit Ms. Hadley's opinion. I find this is not a germane reason to discount Ms. Hadley's opinion.

Accordingly, the ALJ provided a germane reason, supported by substantial evidence, for rejecting the opinion of Ms. Hadley. *Valentine*, 574 F.3d at 694 (one germane reason is sufficient to reject lay testimony).

### B.    Allison Smith (Plaintiff's Wife)

Plaintiff's wife, Allison Smith testified to plaintiff's ADLs in a March 14, 2011 Third Party Adult Function Report, which echoed plaintiff's testimony. Tr. 259. For example, Mrs. Smith noted that plaintiff walked their children to the bus stop and performed light household chores every other

day. Tr. 259-260. In the decision, the ALJ gave some weight to Mrs. Smith's testimony on the basis that her testimony is "not entirely inconsistent with the medical evidence of record." Tr. 34.

Plaintiff argues that the ALJ failed to provide a germane reason in discrediting Mrs. Smith's testimony. Plaintiff also contends that the ALJ did not identify which parts of Mrs. Smith's testimony are inconsistent with the medical evidence. I agree.

As discussed above, the ALJ erred in evaluating plaintiff's credibility, treating source opinions, and the medical evidence. In rejecting Mrs. Smith's testimony, the ALJ cannot rely on his erroneous evaluation of the medical evidence. Thus, the ALJ's sole reason for partially discrediting Mrs. Smith's testimony is not supported by substantial evidence and, therefore, is not germane. Accordingly, the ALJ erred in assessing Mrs. Smith's testimony.

## IV.    The ALJ Erred in Evaluating Step Five

Because I have identified errors in the ALJ's evaluation of plaintiff's testimony and the medical evidence that may impact the RFC, the ALJ could not rely upon the VE's testimony. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). I therefore decline to address plaintiff's step five argument.

## V.    Credit-as-True

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

On this record, I conclude that outstanding issues must be resolved before a final determination of disability can be made. The ALJ's errors call into question whether the RFC finding adequately incorporates all of plaintiff's physical limitations. The ALJ adopted the assessments of nonexamining physicians, Neal Berner M.D., and Martin B. Lahr M.D., who opined that plaintiff could perform reduced light work. Tr. 33, 102-03, 120-21. However, Drs. Berner and Lahr provided their opinions in June 2011 and November 2011, and did not review plaintiff's 2013 MRIs or Dr. Padilla-Vazquez's opinions.

This court declines to credit Dr. Padilla-Vazquez's opinions because they are incomplete. While the opinions provide specific functional limitations, they do not provide a complete

assessment of plaintiff's abilities, including lifting and postural restrictions. In fact, aside from Dr. Padilla-Vazquez, no other examining or treating physician provided a medical opinion of plaintiff's physical limitations. The record also lacks a physical consultative examination. A complete physical assessment would clarify the ambiguity in the medical record. Moreover, Dr. Padilla-Vazquez noted that he recommended plaintiff consult with an neurosurgeon and orthopedic surgeon. Tr. 529. Further proceedings would give the ALJ an opportunity to update the record for surgical consultation notes, if available.

Additionally, the ALJ erred in evaluating plaintiff's credibility. It is the ALJ's responsibility in the first instance to determine credibility, resolve conflicts in the medical testimony, and address any ambiguities in the record. *Vasquez*, 572 F.3d at 591. Although the medical evidence early in the disability period is inconsistent with plaintiff's testimony, recent evidence, such as the MRIs, may support his allegations of pain. On appeal of the ALJ's decision in June 2013, plaintiff and Mrs. Smith testified to plaintiff's worsening back and shoulder pain in separate letters. Tr. 322-26. The Appeals Council made both letters a part of the formal record. Tr. 5. Indeed, the medical record and plaintiff's allegations may support a later onset of disability. Accordingly, the proper remedy is to remand for further administrative proceedings. Thus, I decline to award immediate award of benefits because the record as a whole creates serious doubt as to whether plaintiff is or has been disabled as of his alleged onset date of disability. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings is required to permit the ALJ: (1) to re-contact Dr. Padilla-Vazquez to clarify his opinion; (2) reevaluate Dr. Padilla-Vazquez's opinions and indicate the weight given; (3) further assess plaintiff's RFC; (4) reevaluate plaintiff's credibility and Mrs. Smith's lay testimony; (5)

update the record and order a physical consultative examination if necessary; and (6) evaluate

whether plaintiff is capable of performing other work that exists in significant numbers in the

national economy, with assistance of a vocational expert if necessary.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff

is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C.

§ 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this    30th    day of NOVEMBER, 2015.


                                           /s/ Malcolm F. Marsh
                                           Malcolm F. Marsh
                                           United States District Judge


21 - OPINION AND ORDER